Shaw, C. J.
Upon exceptions from the court of common pleas, the case appears to be this: The plaintiffs have replevied 75 baskets of champagne wine, sold by them as auctioneers, in New York; and the ground of their case was, that a delivery was obtained of the wine to the purchasers, by a fraudulent representation on their part, and so the property did not pass to them; and that the defendants, not being purchasers and holders for value, at least at the time of the trial, had no better title to hold the property against the plaintiffs, than the first purchasers.
On the first question, the jury did not agree. On the second question, the jury found that the defendants came into possession of the property without a knowledge of its having been obtained fraudulently, and that they advanced money on it, in good faith; and they returned a general verdict for the defendants.
The court of common pleas, believing that it was not necessary to the decision of the cause, that the first point of fact should be determined, viz. whether the goods were, in the first instance, obtained by fraud, rendered judgment for the defendants for nominal damages and costs, and for a return of the goods. Two questions now arise :
I. Whether the instructions of the court to the jury were right, and the verdict well warranted by the evidence.
II. Whether, upon the facts, the defendants were entitled to judgment for a return.
I. In discussing the first question, it is to be treated in the same manner as if the goods had in fact been obtained, by tne first purchasers, by fraud; though in justice to them, it should be borne in mind that this fact is not proved; and the truth of it is assumed only for the purpose of the argument.
It is a well established rule, that goods obtained by fraud m the sale, as by false representations, may be reclaimed by the vendor. This does not proceed on the ground that the property in the goods does not pass by the sale, but that the dishonest purchaser shall not hold it against the deceived vendor *74 But it is at the option of the vendor to rescind the contract and reclaim the goods, or not. If he elects to rescind and avoid the sale, he must do it within a reasonable time after coming to the knowledge of the fraud. If he does anything to affirm the sale, after a full knowledge of the facts — especially if he suffer considerable time to elapse, or if others are induced by his affirmance to act — he will not be entitled to disaffirm the sale and reclaim the goods. By the contract, the vendee takes the property in the goods ; but he takes by title defeasible, because, as against the vendor, he cannot honestly, and of course not legally, hold them. But this right of reclaiming can be enforced only whilst the goods are in the hands, first, of the fraudulent purchaser ; or, secondly, of some agent, trustee, or other person holding for the use and benefit of the purchaser; or, thirdly, of some one who has taken them of the purchaser, with knowledge of the fraud by which they were obtained, or with notice sufficient to put him on reasonable inquiry, including, under this head, a mere volunteer, who has obtained the goods without paying any valuable consideration. It follows, that a purchaser for a valuable consideration, without notice, takes a title from the vendee, which is not defeasible, and will therefore hold the goods.
The principle of this rule of law is well illustrated by the distinction between this case and that of stolen goods, or goods pledged by a factor who was authorized to sell them; in both which cases, by the common law, the original owner might reclaim them from an innocent purchaser without notice. In the former case, no title passed by the felonious taking, and therefore none could be communicated (except by sale in market overt, which stands on different grounds,) to a purchaser. In the case of goods pledged by a factor, the title, the right of property of the owner, was never devested by his own act, or by his authority. The factor had a naked authority to sell, and a sale under that authority would have passed a good title from the owner. But the factor had no authority to pledge the goods ; 'his act in that respect was void, and vested no title in the pawnee. Thurston v. Blanchard, 22 Pick. 20. Dresser Manuf. Co. v. Waterston, *75 3 Met. 18. But in the present case, the defendants, without notice, advanced the full value of the wine. Such an advance, in this respect, is equivalent to a purchase for value, and the same principle applies. The defendants took a good title, and had a right to hold the wine, when the action was brought.
II. Are the defendants entitled to a return ? The genera' issue and notice, in the mode of pleading now established by Si. 1836, c. 273, are equivalent to an avowry at common law or a plea of property in another, with a suggestion for a return If the defendants had not, at the time of the trial, received the full amount for which the wine was pledged, it is clear that they would have been entitled to judgment for a return. But it appears that, at that time, they had received a sum of money sufficient to pay their claim; and it is conceded that the money was received on a draft which was Tyler’s property, and was pledged to them by him.
1. The pledge by Tyler, though he acted as broker foi Greene, was of his own property, and in his own name, and for himself. It was not a pledge generally for repayment of the advance, but was collateral to his undertaking, in behalf of Greene, that the wine should come into the defendants’ hands, and be of good quality. So far as the wine did come into the defendants’ hands, and was of good quality, that is, to the extent of the 75 baskets in question, his pledge was redeemed, and he was entitled to have it returned, though for the balance not received he was liable. But before the question could be settled, the defendants collected the whole draft, and to the extent to which the pledge of Tyler to them was made good, to the same extent he was entitled to have the draft restored.
2. By the terms of the agreement with Tyler, the defendants were bound first to apply the goods in their hands, viz. the wine, and could not resort to Tyler’s pledge, until the other failed. It now appears that they had a good title to the wine, as against the plaintiffs, (being holders for value,) and had a right to apply the proceeds thereof to the reimbursement of their advance. The fact that the defendants had, in the mean time, collected the draft, can make no difference; the *76 proceeds stood in place of the draft itself, and did not enure by way of actual payment of the advance, because it was only upon a contingency that it was to be so applied; which contingency had not happened.
E By the express terms of the agreement between Tyler and the. defendants, they stipulated with him, in certain events, to deliver back the wine to him; intending thus to secure him, if they should require him, as they might, to pay the amount of the advance, by taking it out of his own funds collaterally pledged to them. Upon that stipulation, he would have an action against them, either to return the wine, or to account for so much of their money as would be equivalent to its value. In either case, they have a right to a return; either, in the former case, to make good their obligation to him, or, in the latter, to replace the amount of money for which they are liable to account with him. We are therefore of opinion, that the judgment for a return of the goods was right.
A question was made, whether under the circumstances disclosed, the plaintiffs have shown such a right of property as would enable them to maintain this action. Having decided against them, on other grounds, we forbear expressing any opinion on this point.

Exceptions overruled